








```
RYC     7/8/04    9:39
3:02-CV-01349   MYERS V. USA
*148*
*RPLYOPPM.*
```

1  COX & MOYER
   Scott J. Allen (State Bar #178925)
2  703 Market Street, Suite 1800
   San Francisco, CA 94103
3  Tel: (415) 543-9464
   Fax: (415) 777-1828
4
   Attorneys for Plaintiff
5

FILED
04 JUL -7 PM 3: 39
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
                              DEPUTY

BY FAX

United States District Court for the

Southern District of California

| | |
|---|---|
| CHRISTINE MYERS, as guardian ad litem for Lacie Myers, a minor, individually<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, OHM REMEDIATION SERVICES, INC., IT CORPORATION, THE SHAW GROUP, and SHAW ENVIRONMENTAL, INC.<br><br>Defendant. | No: 02-CV-01349-JAH (AJB)<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT REGARDING DEFENDANT UNITED STATES OF AMERICA'S DEFENSE BASED ON THE DISCRETIONARY FUNCTION EXCEPTION**<br><br>DATE: July 16, 2004<br>TIME: 10:30 am<br>DEPT: 11 |

Filed By One Legal

COX & MOYER
703 Market St., Ste 1800
San Francisco, CA 94103

02-CV-01349-JAH (AJB) - PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT REGARDING DEFENDANT USA'S DEFENSE BASED ON THE DISCRETIONARY FUNCTION EXCEPTION

JUL 07 2004 14:40                                   1 415 777 1828            PAGE.08

I. **THE GOVERNMENT DID NOT DELEGATE RESPONSIBILITY FOR ENSURING THAT PROPER SAFETY MEASURES WERE FOLLOWED AT THE BOX CANYON LANDFILL PROJECT.**

In its opposition to the Plaintiff's Discretionary Function Motion, the government argues principally that it did not perform the responsibilities imposed on it by the Camp Pendleton FFA and California state law because the government allegedly delegated its responsibility for the safety of the Box Canyon Landfill to its contractor, IT/OHM. As discussed below, however, the government's assertion that it delegated its responsibility for the safety of the project to IT/OHM has no basis in reality. The discretionary function exception "is not meant to open the door to ex post rationalizations by the Government." Marlys Bear Medicine v. United States, 241 F.3d 1208, 1216 (9th Cir. 2000). The exception may "not be used to allow the Government to create after-the-fact justifications for the purpose of liability protection." Id. The government's assertion that it delegated its safety functions to IT/OHM as a matter of policy must be rejected as nothing more than an ex post (after the fact) justification for its failure to fulfill its obligations under the FFA and state law.

    A. **During Discovery In This Case, The United States Never Produced Any Evidence That It Had Delegated Its Responsibility For The Safety Of The Box Canyon Project To IT/OHM.**

During discovery in this case – discovery occurred between about March, 2003 and June 11, 2004, and is now closed – the government never provided any evidence to suggest that it had delegated its responsibility for the safety of the Box Canyon Landfill project to IT/OHM or that such delegation, if it occurred, was protected by the discretionary function exception. Early in the discovery process, in April of 2003, the Plaintiff propounded an interrogatory to the United States requesting that the government list each of its "affirmative defense (including without limitation any defenses contending that the court lacks subject matter jurisdiction or that the United States has not waived sovereign immunity)", and, for each defense so listed, that the government "(a) state all facts that support said affirmative defense, (b) identify . . . all person with knowledge of the facts that support said affirmative defense, and (c) identify . . . all documents that support said affirmative defense." Declaration of Scott J. Allen dated 7/7/04 ("Allen Decl. 7/7/04"), Ex. B, p. 5 (Interrogatory No. 2). The United States' response to that

COX & MOYER
703 Market St. Ste 1800
San Francisco, CA 94103

02-CV-01349-JAH (AJB) – PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT REGARDING DEFENDANT USA'S DEFENSE BASED ON THE DISCRETIONARY FUNCTION EXCEPTION   -1-

JUL 07 2004 14:40                          1 415 777 1828        PAGE.09

interrogatory, as it relates to the discretionary function exception, was as follows:

> 8. The claims are barred to the extent that they are based on the exercise or performance or the failure to exercise or perform a discretionary function or duty. 28 U.S.C. § 2680(a).
> (a) Based upon law, not fact.
> (b) None.
> (c) None.

Id. at p. 13. Thus, in its response to this interrogatory, the United States failed to state any facts that supported its assertion that the discretionary function exception applies to this case; and specifically failed to state that it had delegated responsibility for the safety of the project to IT/OHM as a matter of "policy." Furthermore, the government's interrogatory response failed to identify Dana Sakamoto[1] as a person with knowledge of facts to support its assertion that the government delegated its FFA duties to IT/OHM.

The United States' response to this interrogatory was served over one year ago, on June 27, 2003, and was <u>never supplemented or amended in any way</u> before discovery closed on June 11, 2004. Thus, the government's opposition to the Plaintiff's summary judgment motion is <u>the first time in this case</u> that the government has ever attempted to produce any evidence that it allegedly delegated its FFA obligations to IT/OHM.

**B.   The Government Did Not Delegate Its Responsibility For The Safety Of The Box Canyon Landfill Project To IT/OHM.**

The government's opposition fails to present any reasonable evidence to show that it actually delegated any of its responsibilities, arising explicitly from the FFA, to IT/OHM.

   **1.   *Lack Of Any Contract Expressly Delegating The Marine Corps' Duties Under The FFA To IT/OHM.***

The government fails to cite any contract in which it <u>expressly</u> delegates its responsibilities under the FFA. For example, the government has not cited any provision in a

---

[1] In May of 2004, the Plaintiff attempted to schedule Mr. Sakamoto's deposition. The United States objected, asserting that the deposition "would be duplicative of testimony regarding environmental remediation already provided by a number of individuals, such as Remedial Project Managers Michael Radecki and Jerry Dunaway." Allen Decl. 7/7/04 Ex. C, at 4:15-18. Based on the government's objection, Magistrate Battaglia issued an order precluding the Plaintiff from taking Mr. Sakamoto's deposition.

COX & MOYER
703 Market St., Ste 1800
San Francisco, CA 94103

02-CV-01349-JAH (AJB) – PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT REGARDING DEFENDANT USA'S DEFENSE BASED ON THE DISCRETIONARY FUNCTION EXCEPTION     -2-

JUL 07 2004 14:40                                 1 415 777 1828           PAGE.10

contract which states something like the following: "The Contractor (IT/OHM) shall designate a Quality Assurance Officer who shall, in accordance with paragraph 20.1 of the FFA, 'ensure that all work is performed in accordance with approved work plans, sampling plans, and QAPPs.'" Likewise, the government has not cited any provision in its contract with IT/OHM in which the government expressly requires IT/OHM to designate a person to fulfill the obligations imposed on the Marine Corps' project manager by paragraph 18.6 of the FFA to "be responsible for day-to-day field activities" at Camp Pendleton. In the absence of an express contractual delegation of its responsibilities under the FFA, the government's assertion that it delegated these duties can not be accepted.[2]

### 2. The Government Did Not Hire A Third-Party Contractor To Supervise The Box Canyon Landfill Project.

The government's suggestion that it delegated responsibility for supervision of the Box Canyon Landfill project to IT/OHM – the same contractor that was performing the work to be supervised – is simply ridiculous. Just as the fox is not given the task of guarding the henhouse, IT/OHM was not delegated the task of supervising itself. The government's claim that it delegated its responsibilities under the FFA might be credible if it had hired a third party (a contractor other than IT/OHM) to supervise IT/OHM's activities; although the discretionary function exception would not protect the government in any event. See, e.g., Camozzi v. Roland/Miller and Hope Consulting Group, 866 F.2d 287, 288 (9th Cir. 1989)(government hired third party consultant to supervise work performed by general contractor). In Camozzi, even though the government delegated its contractual responsibility for the safety of the project to a third party consultant, the Ninth Circuit held that the Plaintiff's claims were not barred by the discretionary function exception. Id. at 292.

### 3. The Work Plan For The Box Canyon Landfill Project Shows That The Government Retained Its Responsibilities Under The FFA.

The documentary evidence in this case clearly establishes that the government retained

---

[2]Instead of presenting evidence that it expressly delegated its responsibilities under the FFA to IT/OHM, the government cites a series of general provisions from its contract with IT/OHM, none of which make any reference to the government's duties under the FFA, and therefore can not be taken as evidence that the government delegated those duties to IT/OHM.

(did not delegate) the responsibilities imposed on it by the FFA. The "Work Plan" for the Box Canyon Landfill project contains an organizational chart for the project, which clearly lists Nars Ancog (a Navy employee) as the Quality Assurance Officer ("QAO") for the project. Allen Decl. dated 6/3/03 Ex. 1. As the QAO, Nars Ancog retained the responsibilities created by paragraph 20.1 of the FFA. There is nothing in the Work Plan to suggest that anyone other than Nars Ancog would fulfill the duties imposed on the QAO by the FFA. In an appendix to the Work Plan, some of the responsibilities and authority possessed by Mr. Ancog as the QAO are listed. According to that appendix, Mr. Ancog was responsible for (a) providing "governmental oversight of OHM Quality Assurance Program"; (b) providing "quality-related *directives*" for the project; (c) providing oversight of "surveillance audits" of the contractor's field work; (d) preparing governmental budge estimates on quality assurance functions for the project; and (e) coordinating training on quality related matters. Allen Decl. dated 7/7/04 Ex. A, p. 114147. Notably, as the QAO, Mr. Ancog also possessed the "authority to suspend" field work on the project if quality[3] assurance requirements were not adequately followed. Id.

### 4. The Declaration Of Dana Sakamoto Does Not Prove That The Government Actually Delegated Its Responsibilities Under The FFA.

The primary support for the government's assertion that it delegated responsibility for the safety of the project to IT/OHM is the declaration of Dana Sakamoto. Mr. Sakamoto's declaration is so general that is can not be viewed as evidence that the Navy or Marine Corps actually delegated its safety responsibilities to IT/OHM at Camp Pendleton. For example, nowhere does Mr. Sakamoto come out and state that either the Navy or Marine Corps <u>actually</u> delegated the responsibilities imposed on the Marine Corps QAO by paragraph 20.1 of the Camp Pendleton FFA. Instead, Mr. Sakamoto's declaration speaks in very general terms. Mr. Sakamoto states that the Navy "does not <u>routinely</u> perform quality control" of its contractors'

---

[3] The term "quality" is defined very broadly in the Work Plan's appendix. "Project quality objectives include meeting technical, regulatory, health and safety, budget, and schedule commitments in a satisfactory manner." Allen Decl. dated 7/7/04 Ex. A, p. 114139. Thus, the QAO's responsibility for quality assurance was broad, encompassing, among other things, ensuring adherence to "health and safety" requirements (such as adherence to the health and safety plan and air monitoring plan).

COX & MOYER
703 Market St., Ste 1800
San Francisco, CA 94102

02-CV-01349-JAH (AJB) – PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT REGARDING DEFENDANT USA'S DEFENSE BASED ON THE DISCRETIONARY FUNCTION EXCEPTION      -4-

JUL 07 2004 14:41                                                1 415 777 1828           PAGE.12

field work. Sakamoto Decl. at ¶ 5. A careful review of Mr. Sakamoto's declaration reveals that he never once mentions Camp Pendleton. Accordingly, Mr. Sakamoto's declaration can in no way be construed to establish that the Navy delegated its safety responsibility at Camp Pendleton.

Moreover, Mr. Sakamoto's declaration contains a tacit admission that the Navy does not typically delegate its responsibility for the safety and quality assurance of remediation projects such as the one at Camp Pendleton. In paragraph 4 of his declaration, Mr. Sakamoto states

> SWDIV has specialists in several areas, including safety and quality assurance, to review the contractors' safety and quality control plans, respectively, and to consult with the contractor at each site as necessary. Additionally, SWDIV monitors the contractors' work through periodically visiting the sites, through regularly meeting with contractor employees to discuss the work, and by requiring the contractors to document the work that they do. (Emphasis added).

Mr. Sakamoto thus admits that the Navy has a "specialist" in the area of "safety" and "quality assurance" that performs quality assurance duties "at each site" (including Camp Pendleton). According to Mr. Sakamoto, those specialists are supposed to review contractor plans, periodically visit the site, hold regular meetings with contractor employees to discuss the work, and require the contractor to document the work that they do.

In this case, Nars Ancog was the Navy's quality assurance specialist (that is, the QAO) for the Box Canyon Landfill project. However, by Mr. Ancog failed to fulfill even the minimal duties that Mr. Sakamoto states are typically assigned to a site's quality assurance specialist. For example, in his deposition, Nars Ancog admitted that he never once visited the "site" of the Box Canyon Landfill project.

5.  **Mr. Sakamoto's Declaration Is In Conflict With The Testimony Of Manny Alonzo, The State Of California's Representative At Camp Pendleton.**

Mr. Sakamoto also asserts, "In my experience, the federal and state environmental regulators accept the delegation of [the Marine Corps'] responsibilities to private contractors under the FFA." Sakamoto Decl. Ex. 4. However, there is no evidence from either the federal EPA or the State of California's regulatory agencies that those agencies knew about, much less "accepted," the Marine Corps' alleged delegation of its FFA obligations to a private contractor.

COX & MOYER
703 Market St., Ste 1800
San Francisco, CA 94103

02-CV-01349-JAH (AJB) – PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT REGARDING DEFENDANT USA'S DEFENSE BASED ON THE DISCRETIONARY FUNCTION EXCEPTION  -5-

JUL 07 2004 14:41                1 415 777 1828              PAGE.13

1  The declaration of Sheryl Lauth, the EPA's representative at Camp Pendleton, is notably silent
2  on the issue of the Marine Corps' delegation of its FFA functions to IT/OHM.
3         Moreover, Mr. Sakamoto's assertion that this supposed delegation was accepted by the
4  regulatory agencies is patently inconsistent with the deposition testimony of Manny Alonzo, the
5  representative from the State of California's Department of Toxic Substances Control.
6  According to Mr. Alonzo's testimony, the FFA required the Marine Corps "to implement the
7  dumping of [the] waste [at Box Canyon Landfill] in a manner that protected public health,
8  welfare and the environment." Allen Decl. dated 6/3/04 Ex. A ("Alonzo Depo") p. 85. Even
9  though the actual dumping of the wastes was performed by IT/OHM, Mr. Alonzo testified that it
10 was the Marine Corps' obligation under the FFA to ensure that IT/OHM performed the dumping
11 in a manner that was protective of human health and the environment. Alonzo Depo. at 87-88.
12        Mr. Alonzo also testified as follows regarding his understanding of paragraph 18.6 of
13 the FFA (which requires the Marine Corps to designate a project manager who is responsible for
14 the "day-to-day" activities at the site):

> Q. . . . was it your understanding . . ., pursuant to paragraph 18.6 here, that even though in 1999 the Marine Corps or Navy had a response action contractor, IT/OHM, doing some work at Camp Pendleton, that that meant that the Marine Corps retained an obligation – on a day-to-day basis – to ensure that those activities were performed by IT and OHM in a manner that complied with this Federal Facility Agreement?
>
> A. Yes.
>
> * * * *
>
> Q. From your perspective as the DTSC project manager, was it important to you to know that the Marine Corps was responsible on a day-to-day basis for supervising the day-to-day activities of its contractors?
>
> A. Yes.
>
> Q. Would you agree with me that the dumping of hazardous waste in a landfill located immediately adjacent to a housing are and an elementary school is an activity that's significantly more dangerous than other construction activities?
>
> * * *
>
> A. Yes.
>
> * * *

COX & MOYER
703 Market St., Ste 1800
San Francisco, CA 94103
02-CV-01349-JAH (AJB) – PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT REGARDING
DEFENDANT USA'S DEFENSE BASED ON THE DISCRETIONARY FUNCTION EXCEPTION    -6-

JUL 07 2004 14:42                              1 415 777 1828            PAGE.14

1  Q. Given the nature of the potential risks of dumping the waste at a site
   adjacent to housing and an elementary school, would it be fair to say that one
2  benefit of having the Marine Corps responsible for supervising the day-to-day
   activities is that they – you need to make sure that you could hold them
3  directly responsible for what was happening there?

4  "A. Yes."

5  Alonzo Depo. at 88-96.

6        Mr. Alonzo also testified as follows about his understanding of the role played by the

7  Navy's Quality Assurance Officer pursuant to paragraph 20.1 of the FFA:

8  Q. [W]as it your understanding . . . that [paragraph 20.1 of the FFA] required
   the Marine Corps to ensure that the work performed under this agreement is
9  done in accordance with the approved work plans, sampling plans and
   QAPPs?
10
   Yes.
11
   Q. And specifically the way that the Marine Corps was supposed to go about
12  doing that was to designate somebody known as a quality assurance officer to
   assure that the work was performed in that manner; correct?
13
14  A. Yes.

   Q. Now, this requirement of paragraph 20.1 would have applied to the
15  activities performed in the Box Canyon Landfill between June and December
   of '99?
16
   A. Every action on the base."
17
   * * * *
18
   Q. . . . [W]hen you, on behalf of DTSC, reviewed the Record of Decision for
19  the Operable Unit 3 remedial action, was it – was it in you mind at that time
   when you issued that concurrence that the Marine Corps would have a quality
20  assurance officer to make sure that those activities were carried out in
   accordance with approved work plans, sampling plans and QAPPs?
21  A. Yes.

22  Q. Okay. When you reviewed the Remedial Action Work Plan for the
   Operable Unit 3 . . . . did you have it in your mind at that time when you
23  reviewed that document that the Marine Corps would have a quality assurance
   officer making sure that they conducted the activities specified in that plan in
24  accordance with that plan?

25  A. Yes.

26  Q. . . . [D]id you have it in mind that the quality assurance officer would
   ensure that remedial action for Operable Unit 3 would be conducted in
27  accordance with an approved Health and Safety Plan?

28  A. Yes"

COX & MOYER
703 Market St., Ste 1800
San Francisco, CA 94103   02-CV-01349-JAH (AJB) – PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT REGARDING
DEFENDANT USA'S DEFENSE BASED ON THE DISCRETIONARY FUNCTION EXCEPTION          -7-

Alonzo Depo. at 97-100.

In short, the testimony of Mr. Alonzo, a representative of the State of California's regulatory agencies, repeatedly testified that he was under the understanding that the Marine Corps retained its responsibilities under the FFA to ensure that work performed at the Box Canyon Landfill was conducted in a manner that protected human health and the environment.

## II. THE GOVERNMENT'S FAILURE TO ENSURE COMPLIANCE WITH SAFETY MEASURES DURING THE BOX CANYON LANDFILL PROJECT IS NOT PROTECTED BY THE DISCRETIONARY FUNCTION EXCEPTION.

As well as being factually unsupportable – the government did not delegate the responsibilities imposed on it by the FFA to IT/OHM – the government's argument that its delegation of its responsibility for the safety of the Box Canyon Landfill project is protected by the discretionary function exception is based on a mis-reading of the case law. For example, the government relies heavily on the district court decision in Vallier v. Jet Propulsion Laboratory, 120 F.Supp.2d 887 (C.D.Cal. 2000). In Vallier, the Central District did find that the government's decision to delegate its waste disposal operations to a contractor was protected by the discretionary function exception. 120 F.Supp.2d at 913. With all due respect to the Vallier court, its reasoning is unpersuasive. Moreover, this case is readily distinguishable from Vallier.

First, the facts in this case, in contrast to Vallier, show that the government did not delegate its obligations to ensure that proper safety measures were followed during the Box Canyon Landfill project.

Second, in Vallier there was no evidence that the government had contractually retained responsibility for ensuring the safety of the waste management activities at issue in the case. In this case, on the other hand, the Marine Corps and Navy expressly retained responsibility for the safety of the Box Canyon Landfill project in its contract with IT/OHM and in the Federal Facility Agreement for Camp Pendleton. Accordingly, this case fits squarely within the well-established line of Ninth Circuit cases holding that, when the government assumes responsibility for the safety of a project, its actions (or omissions) in carrying out its responsibility for the safety of the project are not protected by the discretionary function exception. Marlys Bear Medicine v. United States of America, 241 F.3d 1208, 1215 (9th Cir. 2000)("[W]e have generally held that

COX & MOYER
703 Market St, Ste 1800
San Francisco, CA 94103

02-CV-01349-JAH (AJB) - PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT REGARDING DEFENDANT USA'S DEFENSE BASED ON THE DISCRETIONARY FUNCTION EXCEPTION         -8-

JUL 07 2004 14:42                                           1 415 777 1828         PAGE.16

1  once the Government has undertaken responsibility for the safety of a project, the execution of

2  that responsibility is not subject to the discretionary function exception."); Routh v. United

3  States, 941 F.2d 853 (9th Cir. 1991); Camozzi v. Roland/Miller & Hope Consulting Group, 866

4  F.2d 287 (9th Cir. 1989).

5        Third, in Vallier, there was no claim that California's "peculiar risk" doctrine imposed a

6  non-delegable duty on the government to ensure proper safety measures were followed. Where,

7  as in this case, a state's peculiar risk doctrine imposes a non-delegable duty on the government,

8  the Ninth Circuit has strongly criticized the government's assertion that it may nevertheless

9  delegate its "non-delegable" duty as a matter of policy. See, Camozzi v. Roland/Miller and Hope

10  Consulting Group, 866 F.2d 287, 291 (9th Cir. 1988)("We 'question[] whether the government

11  can administratively immunize itself from tort liability under applicable state law as a matter of

12  'policy'.")(citing McGarry v. United States, 549 F.2d 587, 591 (9th Cir. 1976)).

13        The government also leans heavily on the Ninth Circuit's holding in In re: Consolidated

14  Atmospheric Testing Litigation, 820 F.2d 982 (1987)("Atmospheric Testing"). That case

15  involved personal injury claims arising out of atmospheric nuclear tests performed by

16  government contractors in Nevada beginning shortly after World War II and continuing until

17  about 1963. The government successfully moved to be substituted into the case in place of its

18  contractors pursuant to a special statute, 28 U.S.C. § 2212. The plaintiffs in that case claimed

19  that their personal injuries were caused by the government's negligent failures to take adequate

20  precautions at the nuclear test sites. The Ninth Circuit held that these claims were barred by the

21  discretionary function exception. In reaching that decision, the Ninth Circuit placed great

22  emphasis on the fact that the nuclear tests were conducted pursuant to "a detailed and extensive

23  Operation Plan" which was "adopted on orders from the highest levels of the Executive

24  Department" (that is, by the President himself or cabinet-level officers). Id. at 994. The

25  decisions relating to the safety measures to be taken during the nuclear tests were an "integral

26  part" of the Operation Plan, and were therefore also made by the same high level officers in the

27

28

COX & MOYER
103 Market St., Ste 1800
San Francisco, CA 94102

02-CV-01349-JAH (AJB) – PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT REGARDING
DEFENDANT USA'S DEFENSE BASED ON THE DISCRETIONARY FUNCTION EXCEPTION           -9-

JUL 07 2004 14:43                                              1 415 777 1828         PAGE.17

1  Executive Department. Id.[4] The Ninth Circuit also stressed that the decisions regarding the test
2  were made during the height of the Cold War and the decisions lay at the heart of the nation's
3  policies regarding national defense. Id. at 995. The court thus concluded that the discretionary
4  function exception applied, reasoning:

> A court would be ill-equipped to evaluate the judgments concerning safety made by those officials based on the exigencies of the moment. Any attempt to do so would, moreover, require a comprehensive reexamination of the conduct of the tests and the decisions made during their course which would itself defeat the purpose of the [discretionary function] exception. The consequences of such a reexamination would be to hamper the government in its future conduct of weapons tests and similar operations affecting the national security.

Id.

This case has virtually no similarity to Atmospheric Testing. There is no evidence in this case that any of the decisions regarding the safety of the Box Canyon Landfill were made by high level officials in the Executive Department or that the decisions were an integral part of the nation's national defense strategy.

DATED: July 7, 2004             COX & MOYER

                                By: _____
                                    SCOTT J. ALLEN
                                    Attorneys for Plaintiff

Myers490.Pldg - FINAL Reply Disc Funct Motion.wpd

---

[4] The Ninth Circuit based its decision in Atmospheric Testing on the Supreme Court's decision in Dalehite v. United States, 346 U.S. 15 (1953). In Dalehite, the Supreme Court held that a plaintiff's claims arising from an explosion at a factory producing fertilizer were barred by the discretionary function exception. The Supreme Court noted that the decision to produce the fertilizer was made at "a high level under a direct delegation of plan-making authority from the apex of the Executive Department." Id. at 40 (emphasis added).

COX & MOYER
703 Market St., Ste 1900
San Francisco, CA 94103
02-CV-01349-JAH (AJB) – PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT REGARDING DEFENDANT USA'S DEFENSE BASED ON THE DISCRETIONARY FUNCTION EXCEPTION            -10-

JUL 07 2004 14:43                              1 415 777 1828        PAGE.18

| | |
|---|---|
| 1 | **PROOF OF SERVICE - FRCivP 5(B)** |
| 2 | I, the undersigned, declare under penalty of perjury that the following is true and correct: |
| 3 | I am at all times herein mentioned have been over the age of 18 years, and am employed in the San Francisco County, California, and a, not a party to the within action or cause; my business address is 703 Market Street, Suite 1800, San Francisco, California 94103; |
| 4 | |
| 5 | I am readily familiar with this firm's business practice for collection and processing of correspondence for mailing with the U.S. Postal service, mailing via Federal Express, hand delivery via messenger service and transmission by facsimile machine. I served a copy of each of the documents listed below by placing said copies for processing as indicated herein. |
| 6 | |
| 7 | |
| 8 | **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT REGARDING DEFENDANT UNITED STATES OF AMERICA'S DEFENSE BASED ON THE DISCRETIONARY FUNCTION EXCEPTION** |

 _X_   If Mailed Via U.S. Mail, said copies were placed in envelopes which were then sealed and, with postage fully prepaid thereon, on this date placed for collection and mailing, at my place of business following the ordinary business practices. Said envelopes will be deposited with the U.S. Postal Service, at San Francisco, California on this date in the ordinary course of business, and there is delivery service by U.S. Postal Service at the place so addressed.

 _X_   If Mailed Via Federal Express, said copies were placed in Federal Express envelopes which were then sealed and, with Federal Express charges to be paid by this firm, on this date placed for collection and mailing, at my place of business following the ordinary business practices. Said envelopes will be deposited with the Federal Express Corp. at San Francisco, California on this date in the ordinary course of business, and there is delivery service by Federal Express at the place so addressed.

 ____   If Hand Delivered, said copies were provided to _____, a delivery service, whose employee, following ordinary business practices, did hand deliver the copies provided to the person or firm indicated herein.

 _X_   If Via Facsimile Transmission, said copies were placed for transmission by this firm's facsimile machine, transmitting from (415) 777-1828 at San Francisco, California, and were transmitted following ordinary business practices; and there is a facsimile machine receiving via the number designated herein, and the transmission was reported complete and without error. The record of the transmission was properly issued by the transmitting fax machine.

Karen P. Hewitt, Esq.
Assistant United States Attorney
Office of the United States Attorney
Southern District of California
880 Front Street, Room 6293
San Diego, CA 92101
fax: (619) 557-5004
*Via Fax & Mail only*

Kirsten E. Wilkerson, Esq.
John Adam Bain, Esq.
Charles A. Quinlan, III,. Esq.
Assistant United States Attorney
United States Department of Justice
1331 Pennsylvania Ave., Room 8014S
Washington, D.C. 20004
Fax:    (202)    616-4473
*Via Fax & Federal Express Only*

COX & MOYER
703 Market St., Ste 1800
San Francisco, CA 94103

02-CV-01349-JAH (AJB) - PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT REGARDING DEFENDANT USA'S DEFENSE BASED ON THE DISCRETIONARY FUNCTION EXCEPTION     11

| | |
|---|---|
| Sean Slattery, Esq.<br>Jason F. Meyer, Esq.<br>Gordon & Rees<br>101 W. Broadway, Suite 1600<br>San Diego, CA 92101<br>Fax: (619) 696-7124<br>*Via Fax & Mail Only* | Christopher P. Bisgaard, Esq.<br>Joel A. Goldman, Esq.<br>Lewis, Brisbois, Bisgaard & Smith LLP<br>221 North Figueroa Street, Suite 1200<br>Los Angeles, CA 90012<br>Fax: 213-250-7900<br>*Via Fax & Mail Only* |

Executed on July 7, 2004, at San Francisco, California.

_____
Bonnie J. Horne

COX & MOYER
703 Market St., Ste 1800
San Francisco, CA 94103

02-CV-01349-JAH (AJB) - PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT REGARDING
DEFENDANT USA'S DEFENSE BASED ON THE DISCRETIONARY FUNCTION EXCEPTION      12

JUL 07 2004 14:44                              1 415 777 1828              PAGE.20